UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


NATHANIEL L. ADDERLY,     :
             :
    Plaintiff      :
             :
  v.          :   CIVIL NO. 3:CV-13-1945
             :
CPL. WILSON, et al.,      :   (Judge Kosik)
             :
    Defendants    :


## MEMORANDUM

  Nathaniel L. Adderly, an inmate confined at the State Correctional Institution at Houtzdale, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are Corporal Wilson and Trooper Connors, two Pennsylvania State Police Officers, Counselor Keller and Records Specialist Cheryl Zalandonis, Department of Corrections employees at SCI-Dallas, and Magistrate Judge James Tupper.  Before the court is a motion to dismiss the complaint filed on behalf of all defendants except Tupper.[1]  For the reasons that follow, the motion will be granted.

---

  [1] According to the docket, a certified mail receipt card was returned by the United States Marshal reflecting service on Defendant Tupper, and filed with the court on December 2, 2014.  (Doc. 10.)  To date, there has been no entry of appearance on Tupper's behalf and he has not filed any response to the complaint. It is Plaintiff's obligation to prosecute the case against Tupper.  However, pursuant to the court's screening ability under 28 U.S.C. § 1915(e)(2), the court finds that the claims raised against Tupper are subject to dismissal as set forth herein, as barred by Heck v. Humphrey, 512 U.S. 477 (1994).

## I.      Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6),

the court must "accept as true all [factual] allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most

favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir.

2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the

court is generally limited in its review to the facts contained in the complaint, it "may

also consider matters of public record, orders, exhibits attached to the complaint and

items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat

Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the ... claim is and the grounds upon which it rests."

Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)(quoting Bell Atl.

Corp v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  To

test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court

must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121,

130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a

plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## II.    Allegations in the Complaint

The majority of claims asserted by Plaintiff center around his alleged unlawful prosecution and conviction for failure to comply with registration of sexual offender requirements pursuant to 18 Pa. Cons. Stat. Ann. § 4915.1(a)(1).[2]  In asserting such claims, he alleges that Defendants unlawfully prosecuted him by giving false testimony under oath and conspired against him to bring false charges.  He also raises

---

[2] The court is permitted to take judicial notice of the public records relating to said conviction in considering Defendants' motion to dismiss.  See Oshiver, 38 F.3d at 1384.

claims of retaliation.  The specifics of the claims alleged are as follows.

Plaintiff states that he was transferred to SCI-Dallas from SCI-Frackville on April 29, 2010, after being found not guilty in a jury trial involving charges leveled against him by SCI-Frackville officers for assault of a prisoner.  On May 3, 2010, Defendant Keller was assigned as his counselor, and Plaintiff claims that he was "hostile" toward him, because he referenced the charges of which Plaintiff had been absolved.  The Program Review Committee at SCI-Dallas instructed Keller to investigate Plaintiff's assertions that he had been found not guilty of the prisoner assault charges.  When such was confirmed, Plaintiff states that he was to be released from the Restricted Housing Unit (RHU).

Between May 5, 2010 and October 29, 2010, Plaintiff would inquire of Keller as to whether he confirmed his innocence.  Keller would respond that regardless of what happened in court, the prison did not have to release him from the RHU.  At this point, it appears that Plaintiff had 18 months left to be served in prison. Plaintiff asserts that he remained in the RHU until October 29, 2010, even though Keller confirmed to the PRC a month earlier that he had been found not guilty of the assault charges.   He claims that Keller had an aggressive, hostile attitude towards him as opposed to other inmates.  (Id. at 7-8.)  Plaintiff believes that Keller made him stay in the RHU thirty (30) additional days in retaliation for Plaintiff being found "not guilty" on the SCI-Frackville inmate assault charges.  (Id. at 8-9.)

4

Upon release from the RHU, Plaintiff was housed in E Block.  He was assigned to a different counselor there and states that it was a "friendly" atmosphere. About a week later, Plaintiff was told that he was being relocated to I Block, where Defendant Keller would again serve as his counselor.  Keller informed Plaintiff that he recommended that he be relocated to I Block and to his caseload, since Keller was familiar with him.  (Id. at 10.)

On March 13, 2011, Plaintiff had a parole staffing meeting with Keller, I Block Unit Manager Josefowicz, and two Doe officers.  He claims that Keller was hostile and prejudiced against him, accusing Plaintiff of having a negative attitude while housed in the RHU.  Plaintiff claims that he was denied parole based on his misconducts at SCI-Frackville and Keller's negative recommendation. (Id. at 11-12.)

In April of 2011, Plaintiff states that he filed a civil action against some officers at SCI-Frackville related to being falsely prosecuted for assaulting an inmate. Although he claims that he experienced retaliation for doing so, these allegations are not asserted against any of the defendants named in the instant suit. (Id. at 12.)

In July of 2011, Plaintiff was summoned to meet with Defendant Zalandonis, the Records Specialist at SCI-Dallas.  The meeting was with respect to registration requirements that a residential address and a recent photograph of Plaintiff be provided to the Pennsylvania State Police (PSP) upon his release on August 26, 2011, his scheduled release date.  He informed Zalandonis that he feared retaliation by DOC

5

officials following his release, and therefore he did not wish to provide his residential address.   According to Plaintiff, Zalandonis informed him that he had until August 26, 2011 to provide the PSP with this required information. (Id. at 13.)

On August 22, 2011, four days before he was to be released, Defendant Zalandonis again summoned Plaintiff and requested an address. She stated that the photo would be handled by the I.D. room personnel officials.  Plaintiff reiterated to her their earlier exchange on this issue.  (Id. at 13-14.)

On August 25, 2011, Plaintiff was summoned to the I.D. room.  He states that he allowed the I.D. for utilization by SCI-Dallas.  When asked by Officer Clark for his residential address, Plaintiff states that he complied for the purposes of the utilization by SCI-Dallas.  He was later summoned to I Block by Defendant Keller, and asked for his residential address.  Plaintiff states that he provided Keller with a paper with an address written on it.  (Doc. 1 at 15, Ex. 3.)  Keller stated that the address provided was "a mailing address."  (Id. at 15.)  Plaintiff confirmed to Keller that this was the same address provided to the I.D. room officers as to where they could mail his property.  When Keller insisted that Plaintiff give him a different address, other than the one given for mailing his personal effects/property, Plaintiff responded that this was his only address.  Keller later informed Plaintiff that if he failed to provide him with another address, he would be arrested the next day. Plaintiff again informed Keller that he had no other address to give, and was not

overly concerned because Defendant Zalandonis had previously told him he had until August 26, 2011 to provide an address to the Pennsylvania State Police upon his release.

On August 26, 2011, the date on which Plaintiff was to be released, he was detained by Defendant Wilson, an officer with the Wyoming State Police. Although Plaintiff informed Wilson that he had provided DOC officials with a photograph and residential address for registration purposes, and that he would provide Wilson with the same information, Wilson told him that he "had his chance." Thereafter, Plaintiff was arrested, and informed that a signed copy of the complaint and affidavit was in the car and would be provided to him at Magistrate Judge Tupper's office. (Id. at 17.)

The complaint alleged that Plaintiff refused to provide registration information to SCI-Dallas staff on multiple occasions prior to his release date in compliance with 18 Pa. Crimes Code § 4915(a)(1). (Doc. 1-1 at 1, Crim. Compl.) Plaintiff gave Defendants Wilson and Tupper a summary of the events leading up to his arrest, and offered to provide them with the registration information previously provided to SCI-Dallas staff. When Tupper asked Wilson if this was acceptable, Wilson responded "He had his chance." Plaintiff was thereafter taken to the Luzerne County Correctional Facility. (Doc. 1 at 17.) Plaintiff challenges Defendants' conduct and argues that legal precedent establishes that offenders have additional time following their release to provide the relevant information to the State Police.

7

In September of 2011, a preliminary hearing was conducted before Defendant Tupper.  Defendant Conners attended.  Plaintiff handed Tupper and Conners a motion for dismissal setting forth the facts in his case and providing Plaintiff's residential address.[3]  (Doc. 1-1 at 4-5.)  Regardless, Plaintiff was held for trial.

On July 18, 2012, Plaintiff filed a "Motion for Dismissal" directly with the Luzerne County Court of Common Pleas.  Plaintiff and Defendant Wilson testified at the hearing held on his motion.  According to Plaintiff, Wilson gave false testimony which Plaintiff claims was later substantiated by the trial transcripts of August 20-22, 2012.  Specifically, Plaintiff states that at trial, Wilson claimed that the basis of Plaintiff's arrest was his failure to register directly with the State Police once released, however this is contradicted by the criminal complaint and affidavit.  Based upon Wilson's lies at the hearing, Plaintiff claims that his motion was denied, and that he was remanded to the Luzerne County Prison to await trial.

A trial was conducted on the dates of August 20-22, 2012.  Defendants Zalandonis, Keller, Connors and Wilson testified against Plaintiff.  He also claims that Wilson gave testimony implying to the jury that Defendant Tupper was present during statements made by Plaintiff that Wilson was testifying about.  Plaintiff believes that by doing so, Wilson was inappropriately testifying as if he were Tupper

---

[3] The residential address provided in this document was the same address previously provided to officials at SCI-Dallas.

in front of the jury.  He also claims that there were clear discrepancies in Wilson's

testimony during the trial.  Although Plaintiff does not specifically state in his

Statement of Facts that he was found guilty, it is clear that such is the case.

Based on Defendants' conduct, Plaintiff requests compensatory and punitive

damages, as well as unspecified injunctive and declaratory relief.

Service of the complaint was directed.  A motion to dismiss the complaint filed

by Defendants Wilson, Connors, Keller and Zalandonis (Commonwealth Defendants)

is currently pending on the docket and ripe for disposition.  (Doc. 14.)

## III.   Discussion

In seeking to dismiss the complaint, the Commonwealth Defendants advance

three arguments.[4]  The first is that Plaintiff fails to set forth any facts suggesting the

required elements necessary to demonstrate that Defendants have violated his rights

under the First and/or Eighth Amendments, or that they unlawfully prosecuted him,

knowingly gave false testimony against him, omitted exculpatory evidence, and

conspired against him.  Rather, they contend that he merely sets forth bald conclusory

allegations and that he fails to assert a right to relief above the level of speculation.

See  Twombly, 550 U.S. at 555 (internal citations omitted).  Defendants additionally

_____

[4]  In their motion to dismiss, Defendants reference Plaintiff's "Third Amended
Complaint" in arguing that he fails to state a claim.  In their reply brief, Defendants
point out that any such reference to a Third Amended Complaint was purely a
typographical error in that Plaintiff proceeds on the original complaint in this action.
(Doc. 18, n. 1.)

argue that the complaint constitutes an impermissible collateral attack on Plaintiff's

conviction and sentence, and that his intentional tort claims are barred by sovereign

immunity.

A.    Heck-barred claims

Many of the claims set forth in the complaint center around Plaintiff's

preliminary hearing, pretrial hearing, and trial which resulted in his conviction

pursuant to 18 Pa. Cons. Stat. Ann. § 4915.1(a)(1) for failure to comply with

registration of sexual offender requirements.  For example, he claims that Defendants

engaged in malicious and unlawful prosecution, gave false information under oath,

and that inappropriate testimony was permitted.

These claims brought pursuant to a civil rights action are barred by the rule

announced in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Heck prevents an

indirect attack on the validity of a conviction via a civil rights suit unless the

conviction/confinement has, in effect, been successfully challenged.  In Heck, the

court held as follows:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has been reversed on
> direct appeal, expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, or called into question
> by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §
> 2254.  A claim for damages bearing that relationship to a conviction or
> sentence that has *not* been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 486-87 (footnote omitted).

If Plaintiff were successful against Defendants with respect to these claims, it would necessarily call Plaintiff's current confinement into question.  Although Plaintiff also seeks injunctive relief in addition to monetary damages, the rule of Heck is not rendered inapplicable.  The courts have held that regardless of the relief sought in a Section 1983 suit, if success by the plaintiff would necessarily imply the invalidity of the confinement, Heck bars the suit.  See, e.g., Stawarz v. Rojas, et al., Civ. Action No. 07-165, 2007 WL 1653742, *4, n. 2 (W.D. Pa. June 6, 2007); Allen v. Campbell, 194 F.3d 1311 (Table), 1999 WL 10000833, at *1 (6th Cir. 1999)("A claim challenging confinement must be dismissed regardless of whether the plaintiff seeks injunctive or monetary relief.").

B.      Due process claims

Defendants also seek to dismiss any due process claims brought by Plaintiff under the Fourteenth Amendment with respect to being confined in the Restricted Housing Unit or being denied release on parole.  In analyzing a due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)(citing Fuentes v. Shevin, 407 U.S. 67 (1972)).  Once the court determines that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due

to protect it.  Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  Protected

liberty or property interests generally arise either from the Due Process Clause or

from some specific state-created statutory entitlement.  See Board of Regents v. Roth,

408 U.S. 564, 575 (1972).  However, in the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for
> determining whether prison conditions deprive a prisoner of a liberty
> interest that is protected by procedural due process guarantees.  Although
> the Court acknowledged that liberty interests could arise from means
> other than the Due Process Clause itself, the Court concluded that state-
> created liberty interests could arise only when a prison's action imposed
> an *'atypical and significant hardship on the inmate in relation to the*
> *ordinary incidents of prison life.'* . . . In finding that the prisoner's thirty-
> day confinement in disciplinary custody did not present the type of
> atypical, significant deprivation in which a State might conceivably
> create a liberty interest, the Court considered the following two factors:
> 1) the amount of time the prisoner was placed into disciplinary
> segregation; and 2) whether the conditions of his confinement in
> disciplinary segregation were significantly more restrictive than those
> imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44 (citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings

which result in sanctions of disciplinary segregation for six months and even more do

not impose atypical and significant hardships on the inmate in relation to the ordinary

incidents of prison life in similar situations, and, therefore, do not give rise to due

process claims.  Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months

disciplinary confinement).  See, e.g., Dunbar v. Barone, 12-1337, 2012 WL 2775024

(3d Cir. July 10, 2012)(Finding that inmate placed in disciplinary custody for 540

days as a result of misconduct and presenting no evidence that conditions he faced in

disciplinary custody amounted to an "atypical and significant hardship," does not

amount to due process violation under <u>Sandin</u>); <u>Griffin v. Vaughn</u>, 112 F.3d 703,

705-07 (3d Cir. 1997)(ruling that fifteen months in segregation was not an atypical

and significant hardship); <u>Henderson v. Kerns-Barr</u>, 313 F. App'x 451, 452 (3d Cir.

2008)(90 days disciplinary confinement did not implicate a liberty interest).

As such, to the extent Plaintiff asserts due process claims against Defendants

due to being housed in the RHU, he fails to articulate a sufficient liberty interest to

trigger a valid due process claim in the prison setting for the following reasons.  First,

with respect to the challenged misconduct proceedings, Plaintiff claims that he was

housed in the RHU for approximately 18 months, only six (6) of which were due to

Defendants' actions.  (Doc. 1 at 9.)  Second, he does not raise any claims that the

conditions of his confinement in the RHU were significantly more restrictive than

those imposed upon other inmates in solitary confinement.  <u>See</u> <u>Shoats</u>, 213 F.3d at

144.

Plaintiff appears to support his due process claim, as well as raise a cruel and

unusual punishment claim under the Eighth Amendment, by arguing that he was

denied release on parole due to misconducts he incurred at SCI-Frackville and

Defendant Keller's negative recommendation, which negatively impacted his parole

opportunity.  (<u>Id</u>. at 11-12.)  Any such claim is wholly without merit.  It is well-

established that an inmate does not have a right to release on parole under

Pennsylvania law or the United States Constitution.  Greenholtz v. Inmates of

Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979)("there is no

constitutional or inherent right of a convicted person to be conditionally released

before the expiration of a valid sentence"); Weaver v. Pennsylvania Board of

Probation and Parole, 688 A.2d 766, 770 (Pa. Commw. 1997)(under Pennsylvania

law, parole is a favor, and the prisoner has no protected liberty interest in being

released before a legitimately imposed sentence has expired).  Similarly ". . . there is

no constitutionally mandated right to enter a discretionary parole release program."

Winsett v. McGinnes, 617 F.2d 996, 1005 (3d Cir. 1980), cert. denied, 449 U.S. 1093

(1981); Rauso v. Vaughn, No. 96-6977, 2000 WL 873285, at *7 (E.D. Pa. June 26,

2000)(Parole is not a constitutionally protected liberty interest); Reider v.

Commonwealth of Pa., 93 Pa. Commw. 326, 502 A.2d 272 (1985)(denial of pre-

release status to inmate who met all minimum criteria for participation was not a due

process violation).  Consequently, even though Plaintiff that believed he should have

been granted parole release, this does not implicate the violation of a constitutional

right.

    C.    Retaliation

    In their motion to dismiss, Defendants seek to dismiss Plaintiff's First

Amendment retaliation claims on the basis that they are conclusory and lack any

factual assertions to support them.  Specifically, Plaintiff alleges that it is his belief

that after verifying Plaintiff's innocence on the inmate assault charges, Defendant

Keller made him stay in the RHU thirty (30) additional days in retaliation for the fact

that Plaintiff had not been found guilty.  (Doc. 1 at 8-9.)  In construing the complaint

liberally, it also appears that Plaintiff asserts a retaliation claim against Defendant

Zalandonis arising during their meeting on August 22, 2011.  In opposing the motion

to dismiss, Plaintiff claims that Defendants fail to specifically argue the elements of

retaliation in their motion.  (Doc. 17 at 3.)  In reply, Defendants provide a more

thorough discussion of the retaliation claims.

   To prevail on a retaliation claim, a prisoner must show that: (1) he engaged in

constitutionally protected conduct; (2) he suffered some "adverse action" by prison

officials sufficient to deter a person of ordinary firmness from exercising his

constitutional rights; and (3) his protected conduct was a substantial or motivating

factor in the decision to discipline him.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.

2001).  "To establish the requisite causal connection a plaintiff usually must prove

either (1) an unusually suggestive temporal proximity between the protected activity

and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with

timing to establish a causal link."  Lauren W. V. DeFlaminis, 480 F.3d 259, 267 (3d

Cir. 2007).  Once a prisoner establishes a prima facie case, a defendant may overcome

the retaliation claim by showing "by a preponderance of the evidence that it would

have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002)(citation omitted).

Plaintiff's retaliation claim with respect to Defendant Zalandonis will be dismissed in that he fails to allege any facts as to how Zalandonis retaliated against him in any way, or any adverse action he suffered as a result of any actions by Zalandonis.  In addition, he fails to connect any alleged protected activity taken by him to Zalandonis.  As such, the claim will be dismissed as totally baseless.  The most Plaintiff alleges is that Zalandonis had a meeting with him on August 22, 2011 to request his address.

Plaintiff's retaliation claim against Keller is purely conclusory and unsupported.  While Plaintiff claims that Keller retaliated against him by keeping him in the RHU for thirty (30) extra days, he alleges no support for his belief that Keller did so because Plaintiff had been absolved of the inmate assault charges at a different prison six (6) months earlier.  Moreover, he fails to allege any constitutionally protected activity with respect to the claim against Keller.  While he may believe being confined in the RHU for thirty additional days was motivated by Keller, his belief is nothing more than unsupported speculation.  As such, this claim cannot survive Defendants' motion to dismiss.

D.     State law claims

Defendants also move to dismiss Plaintiff's state intentional tort claims. The doctrine of sovereign immunity bars damage claims for state law torts against employees of Commonwealth agencies acting within the scope of their duties, except for several narrow enumerated exceptions.  1 Pa. Cons. Stat. Ann. § 2310; 42 Pa. Cons. Stat. Ann. § 8522; Tinson v. Commonwealth, 1995 WL 581978, at *6 (E.D. Pa. Oct. 2, 1995); LaFrankie v. Miklich, 152 Pa. Cmwlth. 163, 618 A.2d 1145, 1148-49 (1992).  Sovereign immunity applies to claims asserted against Commonwealth employees in their individual capacities.  Maute v. Frank, 441 Pa. Super. 401, 657 A.2d 985, 986 (1995).  In addition, Commonwealth employees are immune from liability even for intentional torts.  La Frankie, 618 A.2d at 1149.

The Department of Corrections is an agency of the Commonwealth and the defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity.  See Maute, 657 A.2d at 986 (state prison officials enjoy sovereign immunity); Robles v. Pennsylvania Dept. of Corrections, 718 A.2d 882, 884 (Pa. Cmwlth. 1998)(same).  As set forth in the complaint, the acts for which the defendants are being sued were conducted within the scope of their duties as employees of the Department of Corrections.  None of the narrow

exceptions to sovereign immunity apply here.[5] <u>See</u> 42 Pa. Cons. Stat. Ann. § 8522(b).

Thus, Defendants' motion to dismiss Plaintiff's state law claims will be granted.

     For the above reasons, the motion to dismiss will be granted.  In addition, the

claims set forth against Defendant Tupper will be dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B).  An appropriate order will be issued.

---

[5] The enumerated exceptions are: vehicle liability, medical-professional liability, liability arising from the Commonwealth's control of personal property, real property or animals, liability relating to state liquor store sales, the National Guard, or toxoids or vaccines.  42 Pa. Cons. Stat. Ann. § 8522(b).